## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

**VANESSA MUNIZ GERENA,**
*on behalf of herself and others*
*similarly situated,*

       Plaintiff,

v.                                    Civil Action No.

**EQUIFAX WORKFORCE**           **JURY TRIAL DEMANDED**
**SOLUTIONS, LLC**
**d/b/a THE WORK NUMBER,**

       Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Vanessa Muniz Gerena ("Ms. Muniz" or "Plaintiff"), *individually and on behalf of others similarly situated*, by counsel, brings this Complaint against Defendant Equifax Workforce Solutions, LLC d/b/a The Work Number ("The Work Number" or "Defendant") on the grounds and for the relief set forth herein:

### PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, and punitive damages; costs; and attorney's fees pursuant to 15 U.S.C. § 1681 *et seq*. (Federal Fair Credit Reporting Act—"FCRA").

2.      Plaintiff is the victim of identity theft—a pervasive and destructive crime. One or more unknown fraudsters obtained and used Ms. Muniz's personal information to secure employment at multiple companies across multiple states, including at OK Foods, Inc., which operates poultry processing plants. At least one fraudster gained employment at an OK Foods plant in Albertville, Alabama.

3.      The Work Number is a consumer reporting agency ("CRA") that holds a repository of employment data. Equifax updates this database when employers provide it with payroll and other employment-related data.

4.      According to its website, The Work Number database holds over 641 million current and historic employment records. The Work Number sells information from this database to various entities, among them government agencies that use the employment records The Work Number sells to verify eligibility for government assistance programs.

5.      The Work Number does not have procedures to assure the maximum possible accuracy of the information it sells.

6.      The Work Number accepts the consumer information it receives from employers at face value, and does not take any steps to review, analyze, or filter the data for accuracy.

7.      Likewise, The Work Number does not sample or test the accuracy of the data it receives from employers.

8.      The Work Number has reason to know employer data can be inaccurate. The Work Number routinely receives disputes from consumers indicating that the data it obtained from employers was inaccurate.

9.      The use of stolen personal identifying information by undocumented immigrants is a pervasive and well-known problem—well over 1 million illegal immigrants use Social Security numbers belonging to someone else in order to obtain employment.

10.     The problem of undocumented immigrants using stolen identities to obtain employment is particularly pervasive in meat and poultry processing plants, and employers in this industry know that their workers use fraudulent Social Security numbers to obtain employment.

Non-citizens make up the majority of the workforces in these plants, and many of these workers lack authorization to work in the United States.

11.    The consequences of this problem are far-reaching—the illegal use of a U.S. citizen's Social Security number to obtain employment can cause that citizen to lose the assistance of government benefits, including unemployment, child-care, and Supplemental Nutrition Assistance Program (SNAP), and result in improper tax liability calculations by the IRS.

12.    Despite these well-known issues and dire consequences for Americans, The Work Number chooses to flout its legal obligation under 15 U.S.C. § 1681e(b) to "follow reasonable procedures to assure maximum possible accuracy of the information" it reports to its customers, including government agencies, regarding employment data. *Id.*

13.    The Consumer Financial Protection Bureau (CFPB) has noted, "experience indicates that [Consumer Reporting Agencies] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how Defendant has complied with its now over 50-year-old obligation to report information for Americans victimized by employment identity theft.

14.    Ms. Muniz brings this class action against The Work Number because it violated § 1681e(b) on a systemic basis. Defendant reported inaccurate employment information about Plaintiff and others like her, rather than maintain reasonable procedures to assure maximum accuracy. It instead deferred to nonsensical, contradictory, and unverified information reported automatically by its employer customers.

15.    When Ms. Muniz disputed the false employment information, Defendant violated § 1681i, as it does with respect to numerous consumers, by unlawfully imposing a burdensome

"proof of address" submission from Ms. Muniz as a precondition to fulfilling its legal obligation to conduct a lawful reinvestigation. This hurdle, and others like it, created by The Work Number are designed to reduce the number of disputes that it must process. Accordingly, Ms. Muniz also alleges a class action claim against The Work Number for its systematic imposition of barriers to illegally reduce expenses incurred in reinvestigating consumer disputes as required by the FCRA.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction as to this case under the provisions of 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

17.     Venue is proper under 28 U.S.C. 1391(b)(1) and Local Civil Rule 3(C) because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in this District and Division, and the Defendant transacts business within this District and Division.

## PARTIES

18.     Ms. Muniz is a natural person residing in Midlothian, Virginia. At all times relevant to the Complaint, Ms. Muniz was a "consumer" as defined by 15 U.S.C. § 1681a(c).

19.     The Work Number is a foreign corporation that does business in the Commonwealth of Virginia. The Work Number is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

## FACTUAL ALLEGATIONS

### Section 1681e(b) of The Fair Credit Reporting Act Requires Robust Procedures to Assure Maximum Possible Accuracy in Defendant's Consumer Reports

20.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate

information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

21.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including § 1681e(b), one of the cornerstone provisions of the FCRA. Whenever a consumer reporting agency prepares a consumer report, § 1681e(b) requires CRAs, like The Work Number, to follow reasonable procedures to assure maximum accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

22.     The Work Number is a consumer reporting agency and is charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information it reports. The Work Number fell short of that duty here, as it reported inaccurate, nonsensical information that adversely affected Ms. Muniz and those like her.

23.     One of these measures, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information. Congress also gave individuals the right to sue reporting agencies for violations of FCRA. Id. § 1681e(b) sets forth the CRAs' overall duty:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke*, at *4.

24.     Further, as The Work Number is aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendant has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." Webster's Third New International Dictionary 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." Id. at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

25.     As the Fourth Circuit explained in Johnson v. MBNA:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry")

357 3d 426, 430 (4th Cir. 2004).

26.     It has long been the law—since 1970 in fact—that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 Years Of Experience with the Fair Credit Reporting Act (July 2011),

at 67.[1]

27.     Despite consumer disputes and complaints and notice from report users, Defendant continues to report employer information without review, much less, filtering and takes no substantive steps to assure accuracy.

### Defendant Failed to Implement Procedures to Prevent Inclusion of Facially False Data In Its Consumer Reports

28.     As The Work Number knows, "a consumer reporting agency is uniquely positioned to identify certain obvious inaccuracies and implement policies, procedures, and systems to keep them off consumer reports." Consumer Fin. Prot. Bureau, *Fair Credit Reporting Act—Facially False Data*, 87 Fed. Reg. 64689-02 (Oct. 26, 2022).

29.     Importantly,

> In some cases, such as when certain account or other information fields on consumer reports are logically inconsistent with other fields of information, a consumer reporting agency can detect the logical inconsistencies and prevent the inaccurate information from being included in consumer reports it generates, thereby avoiding the consumer harm to individual consumers that can result from reporting such inaccurate information.

*Id.*

30.     The Work Number allows employers to report information in a manner which exacerbates the likelihood of erroneous information appearing in its consumer reports. Employers are not required to identify to The Work Number the physical location of their employees' work. For instance, Wal-Mart simply reports its address as "702 SW 8th St., Bentonville, AR 72716," and "Amazon.com, Inc. and its affiliates" reports an address of "207 Boren Avenue N., Seattle, WA 98109." Wal-Mart employs nearly 1.6 million individuals in the United States, many, if not

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

most, of whom work at locations outside Bentonville, Arkansas. Amazon employs over a million people in the United States with most of these employees working outside Seattle, Washington. Defendant can require employers to identify a work location but chooses not to do so; instead, it lets the employer decide whether to report a work location. Defendant could also require employers to identify the state of employment or the state where an employee pays taxes but chooses not to do so.

31.     The Work Number likewise has access to but never uses resources to identify where an employee lives separately from any information from the employer.

32.     The Work Number routinely maintains and reports facially false data about consumers. For example, The Work Number reported simultaneous employment for Ms. Gerena in Alabama and Florida, in locations approximately 600 miles apart. The Work Number employs no substantive procedures to filter or parse data to prevent reporting of simultaneous employment which would be impossible because of geographic distance between employment or residence location, time constraints, or even common sense. It also employs no procedures to prevent reporting of employment at a location hundreds or even thousands of miles from the consumer's residence.

***Defendant Imposes Barriers on Consumers Disputing Inaccurate Information While Allowing
Its Customers to Access Consumer Reports With Minimal or No Identifying Information***

33.     The Work Number does not make money by processing disputes from consumers—in fact, this is purely an expense for Equifax, i.e., a cost center. It is in The Work Number's interest to reject disputes for any possible reason, as doing so saves money.

34.     For example, The Work Number informed Plaintiff that it would not process a dispute from her unless she provided "proof of address" in the following form:

Provide a copy of one of the following (must include current mailing address and be issued

within the past 60 days)
- Utility bill (phone, water, gas, electric, trash or sewer, etc.)
- Paystub
- Housing Rental Agreement or Mortgage document in your name
- W-2 or 1099 Form (most current year)

35.     It also insists that consumers provide their full Social Security number, full date of birth, and government issued identification card.

36.     Notwithstanding these onerous requirements placed on consumers—for which no justification is found in the FCRA—Defendant sells consumer reports to its customers if those customers provide as little as a Social Security number with no name, address, or date of birth. The Work Number even sells employment history reports to customers where the customer searches by employer, not by specific employee.

37.     The Work Number does not require that these customers provide a copy of a government issued identification card for the subject of the requested report.

38.     Furthermore, The Work Number does not require that these customers provide a copy of a utility bill, paystub, lease or mortgage document, or W-2 or 1099 for the subject of the requested report.

39.     The Work Number imposes onerous requirements on consumers requesting reinvestigations to reduce the number of disputes that it must process.

40.     The Work Number makes money by selling credit reports.

41.     The Work Number does not make money by processing disputes for consumers complaining about inaccurate information in their consumer files.

42.     Therefore, according to Defendant's unjustifiable and burdensome requirements, a consumer who lives in a rural area and does not have access to a photocopier to make a copy of a government issued identification card and/or utility statement could not have his or her dispute

processed at all.

43.     Similarly, a consumer who does not possess government issued identification or does not have a utility bill, paystub, lease or mortgage document, or W-2 or 1099 could not have his or her dispute processed.

*Facts Relating Specifically to Plaintiff*

44.     Ms. Muniz is a native of Puerto Rico. She moved to Virginia from Puerto Rico in or around May 2015.

45.     In or around 2015, after she moved to Virginia, Plaintiff began discovering that an unknown individual was using her personal identifiers. She applied for a cell phone account, but the cell phone provider informed her that an unknown individual had previously opened an account using her personal identifiers.

46.     In 2021, Plaintiff discovered that she was the victim of extensive identify theft: a fraudster had completely stolen her identity and used it to open credit accounts, purchase vehicles with automobile loans, and purchase homes with mortgage loans. This unknown individual operated in Florida; Plaintiff has never lived in Florida and has been a resident of Virginia ever since she moved from Puerto Rico in 2015.

47.     Plaintiff commenced the work to restore her identity: she completed an online FTC Identify Theft report, and filed a police report with the Chesterfield County Police Department detailing the identity theft.

48.     In or around March 2022, Plaintiff discovered that the theft of her identity was yet more extensive.

49.     Prior to March 2022, Plaintiff regularly received benefits from the Virginia Department of Social Services ("DSS") under the federal Supplemental Nutrition Assistance

Program.

50.     On or around February 18, 2022, DSS mailed Ms. Muniz a notice that her SNAP benefits would cease effective February 28, 2022. Plaintiff received the letter in early March 2022, and immediately contacted DSS to determine the cause of the cessation of benefits.

51.     DSS informed Plaintiff that it had obtained a report from The Work Number which stated that she was employed at OK Foods at a plant located in Alabama. The report inaccurately stated that she was paid wages for work at OK Foods as recently as February 11, 2022, and that she worked a full-time job there.

52.     The report bewildered Plaintiff, as she had only ever lived in Virginia since moving from Puerto Rico, and as a homemaker had not worked for any company since 2015.

53.     In November 2022, Plaintiff sent a disclosure request to The Work Number, including with that request copies of her driver's license, Social Security card, and bill from Dominion Energy.

54.     The disclosure that Plaintiff received from The Work Number shocked and confused her. Because she received benefits from Virginia DSS, the Commonwealth of Virginia was the main requester of information—Virginia had requested verification of employment information from The Work Number eight times in the two years preceding November 2022; the most recent request from Virginia DSS was in August 2022. Despite this, The Work Number simultaneously reported that she was actively employed at OK Foods at a location in Albertville, Alabama, and that she had been actively employed at OK Foods continuously since July 2018. The report further stated that she lived at an address in Albertville.

55.     Furthermore, the disclosure nonsensically stated that she also had been employed in June 2022 at a Wal-Mart and lived at an address in Zephyrhills, Florida, and that she had been

employed at an Amazon location in August 2022 and lived at another address in Tampa, Florida.

56.    The report did contain an indication of the actual truth—in 2015 Plaintiff was briefly employed by a temp agency called Employbridge, which was accurately reported by The Work Number, and her address while employed there was accurately reported as being in Chesterfield, Virginia.

57.    Plaintiff mailed a letter (with a copy of her driver's license) to The Work Number in February of 2023 to dispute the inaccurate information contained in the report. Within days of receiving this dispute letter, The Work Number e-mailed Plaintiff, stating that it would not process her dispute unless she provided "proof of address" in the following form:

> Provide a copy of one of the following (must include current mailing address and be issued within the past 60 days)
> - Utility bill (phone, water, gas, electric, trash or sewer, etc.)
> - Paystub
> - Housing Rental Agreement or Mortgage document in your name
> - W-2 or 1099 Form (most current year)

58.    The Work Number's request for "proof of address" occurred after it had already mailed her a disclosure (nearly three months earlier) to the address it supposedly sought to verify.

59.    Plaintiff expended lost time and money in fulfilling The Work Number's burdensome and nonsensical demand for "proof of address."

60.    The Work Number then responded to Plaintiff's request with the results of the reinvestigation, mailed to her Chesterfield, Virginia address. While The Work Number did remove all of the inaccurate information, it also enclosed an updated disclosure which inaccurately, and at this stage bizarrely, stated that Plaintiff now actively worked for a new employer in Albertville, Custom Cut Solutions LLC, and that she lived at same residence address previously associated with her "employment" at OK Foods. The disclosure also listed that Virginia DSS had requested employment verification data from The Work Number again in February 2023.

### *The Work Number's Violations Were Willful*

61.     The Work Number's reporting of the inaccurate employment information was willful and carried out in reckless disregard for the consumers' rights under the FCRA. Likewise, The Work Number's decision obstructing consumers seeking to obtain reinvestigations of inaccurate reporting was willful and in reckless disregard of its FCRA duties.

62.     The Work Number's conduct was willful because it was accomplished through intended procedures that prioritize its own profitability over accuracy.

63.     The Work Number is a subsidiary of Equifax, Inc. ("Equifax"). The FCRA was enacted in 1970, and The Work Number has had decades to become compliant.

64.     The Work Number is a large company with access to legal advice through its own general counsel's office and/or outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful.

65.     The Work Number knew or had reason to know that its conduct was inconsistent with numerous Attorneys General's guidance, case law, and the plain language of the FCRA.

66.     The Work Number voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

67.     Numerous consumers have made disputes and complaints to The Work Number regarding the reporting of inaccurate employment information, but The Work Number has failed to adjust or even implement procedures to assure maximum possible accuracy in its reporting. The Work Number knows that the burdens it imposes on consumers seeking reinvestigations reduce the number of disputes it processes and increase inaccuracies in its consumer reports.

68.     The Work Number knows that the use of stolen personal identifiers by undocumented immigrants to obtain employment is a significant problem, but instead of

implementing procedures designed to check the accuracy of information reported by employers, The Work Number merely parrots the information provided.

69.     The Work Number knows that many consumers lack the ability to comply with its burdensome and unwarranted request for identification and address information it never requires from its customers seeking employment information about consumers.

70.     Even when consumers repeatedly dispute reporting from a particular employer as inaccurate, The Work Number removes false reporting about the disputing consumers but otherwise continues to report employment information from that employer as to other consumers without change.

71.     The Work Number knows that the reporting of false employment information to government agencies causes dire consequences to U.S. citizens, including the loss of government benefits, yet it does nothing to implement procedures that would assure maximum possible accuracy when it reports employment data to government agencies.

72.     The Work Number knows that its impositions on consumers result in fewer completed disputes and less accurate consumer reports but continues its conduct unabated because doing so reduces expenses.

73.     The Work Number's violations of the FCRA were repeated and systemic.

**CLAIMS FOR RELIEF**

**COUNT ONE: VIOLATION OF THE FCRA, 15 U.S.C. §1681e(b)**
**(Class Claim)**

74.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

75.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as:

**1681e(b) Class:** All persons residing in the United States who (1) were the subject of a consumer report published by The Work Number; (2) within the five years before the filing of this action; (3) containing employer information originating from an employer who submitted a W-2 that was posted to the Social Security Administration's Earning Suspense File; (4) and have consumer files at The Work Number reflecting simultaneous employment by separate employers who provided employee addresses in different states.

Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any person employed by the Federal Judiciary, and all persons who have signed a written release of his or her claim.

76.     Plaintiff is a member of the 1681e(b) Class.

77.     **Numerosity. FED. R. CIV. P. 23(a)(1).** Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all their claims is impractical. The class members' names and addresses are identifiable through The Work Number's internal business records, and they may be notified of the pendency of this action by published and/or mailed notice.

78.     **Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. These common questions include (a) whether The Work Number's conduct violated § 1681e(b) by reporting inaccurate information related to the class members' employment data; (b) whether The Work Number maintained reasonable procedures designed to avoid violations of § 1681e(b); (c) whether The Work Number's conduct was willful or negligent; and (d) the appropriate amount of damages to be awarded to each consumer.

79.     **Typicality. FED R. CIV. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same cause of action as the other

putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

80.     **Adequacy of Representation.** FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with their counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with their vigorous pursuit of this action.

81.     **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by The Work Number's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

82.     As described above, The Work Number violated § 1681e(b) of the FCRA by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the

preparation of the employment reports it published and maintained concerning the Plaintiff and the class members.

83.     The Work Number knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission (FTC) and CFPB, and in well-established case law.

84.     The Work Number obtained or had available substantial written materials that apprised it of its duties under the FCRA.

85.     Despite knowing of these legal obligations, The Work Number acted consciously in breaching its known duties and deprived Plaintiff and the class members of their rights under the FCRA.

86.     The Work Number published multiple inaccurate employment reports relating to Plaintiff and the class members to third parties.

87.     As a result of The Work Number's failure to comply with the requirements of the FCRA, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, economic loss, and/or increased risk of loss of employment, government benefits, or credit.

88.     The Work Number's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violations were negligent, entitling Plaintiff and each member of the putative class to recover against The Work Number under 15 U.S.C. § 1681o.

89.     Plaintiff and each class member are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.

## COUNT TWO: VIOLATION OF THE FCRA, 15 U.S.C. §1681i
### (Class Claim)

90.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

91.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class initially defined as:

> **1681i Class:** All persons residing in the United States who were the subject of a consumer report published by The Work Number within the five years before the filing of this action and for whom The Work Number refused to conduct a reinvestigation of a dispute until and unless the consumer provided proof of address documentation following The Work Number's receipt of the dispute.

> Excluded from the class definition are any employees, officers, directors of Defendant, any attorney appearing in this case, any person employed by the Federal Judiciary, and all persons who have signed a written release of his or her claim.

92.     Plaintiff is a member of the 1681i Class.

93.     <u>**Numerosity**</u>. FED. R. CIV. P. 23(a)(1). Upon information and belief, Plaintiff alleges that the class members are so numerous that joinder of all their claims is impractical. The class members' names and addresses are identifiable through The Work Number's internal business records, and they may be notified of the pendency of this action by published and/or mailed notice.

94.     <u>**Predominance of Common Questions of Law and Fact**</u>. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all putative class members, and there are no factual or legal issues that differ between the putative class members. These common questions predominate over the questions affecting only individual class members. These common questions include (a) whether The Work Number had a right to request "proof of address" documentation before processing their disputes; (b) whether The Work Number actually required "proof of

address" documentation in order to locate the consumers' files; (c) whether Defendant refused to process the consumers' disputes absent submission of "proof of address" documentation; (d) whether The Work Number's conduct was willful or negligent; and (e) the appropriate amount of damages to be awarded to each consumer.

95.     **Typicality.** FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each putative class member. Plaintiff is entitled to relief under the same cause of action as the other putative class members. Additionally, Plaintiff's claims are based on the same facts and legal theories as each of the class members' claims.

96.     **Adequacy of Representation.** FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the other putative class members. Plaintiff has retained counsel competent and experienced in such litigation and intends, with their counsel, to continue to prosecute the action vigorously. Plaintiff and her counsel will fairly and adequately protect the class members' interests. Neither Plaintiff nor her counsel have any interest that might conflict with their vigorous pursuit of this action.

97.     **Superiority.** FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each class member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for individual class members to effectively redress the wrongs done to them. Even if the class members could afford individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and

expense to all parties and to the court system presented by the legal and factual issues raised by The Work Number's conduct. By contrast, the class-action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

98.     The Work Number violated § 1681i by its conduct which includes, but is not limited to: (a) failing to conduct a reasonable reinvestigation absent submission of "proof of address" documentation; (b) failing to provide notice of disputes to its furnishers of the disputed information within the 5 business days of receipt of dispute; (c) refusing to reinvestigate disputes when the consumer provided sufficient information to reinvestigate the disputed information; and (d) failing to review and consider all relevant information submitted by the consumer within 30 days of receipt of the consumer's dispute.

99.     As a result of The Work Number's failure to comply with the requirements of the FCRA, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, economic loss, and increased risk of loss of employment, government benefits, or credit.

100.     The CFPB issued guidance in November 2022 advising that CRAs "must reasonably investigate disputes received directly from consumers that are not frivolous or irrelevant . . . even if such disputes do not include the entity's preferred format, preferred intake forms, or preferred documentation or forms." Consumer Fin. Prot. Bureau, Reasonable Investigation of Consumer Reporting Disputes, Circular 2022-07 (Nov. 10, 2022).

101.     Nonetheless, The Work Number continued (and continues) to insist that consumers provide its preferred documentation as a precondition to reinvestigating disputes.

102.     The Work Number's violations were willful, rendering it liable for punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violations were negligent, rendering The Work Number liable under 15 U.S.C. § 1681o.

103.    Plaintiff and each class member are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff requests certification of the classes pursuant to Fed. R. Civ. P. 23(b); demands judgment on liability finding that Defendant willfully, or in the alternative negligently, violated 15 U.S.C. §§ 1681e(b) and 1681i; demands judgment for actual, statutory, and punitive damages against the Defendant, for attorneys' fees and costs, for prejudgment and postjudgment interest at the legal rate, and such other relief the Court deems appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

**VANESSA MUNIZ GERENA**

By:    /s/ *Leonard A. Bennett*
Leonard A. Bennett (VSB No. 37523)
Craig Marchiando (VSB No. 89736)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, 1-A
Newport News, Virginia 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
E-mail: lenbennett@clalegal.com
E-mail: craig@clalegal.com

Drew D. Sarrett (VSB No. 81658)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 E. Broad Street, Suite 300
Richmond, Virginia 23219
Phone: (804) 905-9900
Fax: (757) 930-3662
E-mail: drew@clalegal.com

Stephen L. Flores (VSB No. 92900)
**FLORES LAW, PLLC**
530 E. Main Street, Suite 320
Richmond, Virginia 23219
Phone: (804) 238-9911
Fax: (804) 203-8717
E-mail: stephen@floreslawva.com
*Counsel for Plaintiff, Vanessa Muniz Gerena*